GEORGE HAIRSTON *et al.*

*v.*

LORENZO C. WARD *et al.*

*Filed at Ottawa November 20, 1883.*

DEED OF TRUST—*setting sale aside for want of personal notice.* On bill filed to set aside a trustee's sale and deed, made under a deed of trust, on the ground the sale was made in violation of a promise to give the debtor's agent notice before taking steps to sell, in time to enable him to make payment, the evidence as to such promise was conflicting and about equally balanced, and the subsequent conduct of the debtor after the sale was inconsistent with the fact of there having been any such promise or of any reliance upon it, and there were subsequent occurrences that took place between the parties before the sale which did away with the effect of any such promise, if any was made, in which the debtor had time given him to make payment, and was notified that no further extension would be given: *Held,* that the bill was properly dismissed, the proof showing no sufficient ground to set aside the sale.

APPEAL from the Circuit Court of Cook county; the Hon. T. A. MORAN, Judge, presiding.

Messrs. BISBEE, AHRENS & DECKER, for the appellants.

Mr. JOHN WOODBRIDGE, for the appellees.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

On the 17th day of August, 1874, George Hairston and Nicholas E. Hairston executed a bond to Lorenzo C. Ward, for the payment to him of $11,000 on the 17th day of February, 1877, with interest at the rate of ten per cent per annum, payable semi-annually, the interest payments being evidenced by five interest coupons, to secure the payment of which the said Hairstons executed a trust deed, with power of sale to Pindar Ward, upon certain real estate in Chicago,

being outside property, and consisting of $9\frac{43}{100}$ acres of land. On the 8th day of December, 1879, the trustee in the trust deed, for default in the payment of the principal and accrued interest of said indebtedness, offered the said premises for sale at public sale under the deed of trust, and struck off the same to Lorenzo C. Ward, who bid $7000 therefor, which amount, less expenses, was credited on the bond, and he received the usual trustee's deed for the premises. On June 20, 1881, the Hairstons filed their bill in chancery in the circuit court of Cook county to set aside said trustee's sale and trust deed, and to redeem the premises, on the sole ground that Lorenzo C. Ward, before the sale, had agreed with Edgar Loomis, the agent of the complainants in Chicago, that before he took any steps to foreclose the trust deed he would give Loomis personal notice, and ample time to get and pay Ward the money, and that the sale was made without such notice, and without the knowledge of complainants or Loomis. Upon hearing, on proofs, the circuit court dismissed the bill, and the complainants appealed to this court.

The evidence is not satisfactory that there was the promise made which is relied upon as the ground for relief. It is testified to by Loomis, and denied by Lorenzo C. Ward. Loomis' testimony is, that he had a conversation with Ward upon the subject of the indebtedness, and that "finally Mr. Ward wouldn't agree,—would not say that he would hold it any particular time; but that before he took any steps to foreclose the trust deed he would give me personal notice, and ample time to get and pay him the money." Mr. Ward denies making this statement, or that he at any time talked with Loomis on the subject. and promised him that he would give him any notice whatever.

Subsequent to the sale there were two interviews between George Hairston and Lorenzo C. Ward,—one in June, 1880, and one in June, 1881,—when Hairston came to St. Charles, in this State, where Ward lived, to see him in regard to the

sale and the property.  There is uncontradicted testimony that at neither of these interviews did Hairston express any dissatisfaction at the making of the sale, or say anything whatever of such a promise having been made; and that at the first interview Hairston said, that in all this business and the transactions between them he had nothing to complain of,—no unfairness on the part of Lorenzo C. Ward.  This is conduct inconsistent with there having been such a promise, or at least with there having been any reliance upon it.

But had there been the promise to Loomis as testified to, there were subsequent occurrences that took place between George Hairston and Ward, which, we think, do away with the effect of such promise, as affording any ground for relief in this case.  Loomis is a little indefinite about the time of the supposed promise, but in the bill the time of the promise is stated as "at about the maturity of the bond."  On October 10, 1877, some eight months after the maturity of the bond, (and so, as we take it, after the supposed promise to Loomis,) Ward writes this letter to one of the Hairstons:

"ST. CHARLES, *Oct. 10, 1877.*

"*N. E. Hairston, Esq., Crawfordsville, Miss.:*

"Dear Sir—I have been hoping to hear from you since my last.  I have bought in your property for taxes,—about $1800, for three passed years.  *  *  *  But now, my friend, how soon are you coming up, to square up interest and taxes?  You must get round.  The principal can run. Write me.  *  *  *  Don't you see I am getting a good deal of money in this?  It is crowding $15,000.

"Yours, truly,          L. C. WARD."

On February 27, 1878, George Hairston called upon Lorenzo C. Ward, at St. Charles, and paid him $500.  At that time there was some $3500 due for interest, and taxes which Ward had paid.  Ward testifies: "I remember the payment made by Hairston to me of $500, in 1878.  *  *  *  At

that time had some conversation with Hairston about this matter. I said to him he need not ask for further favors unless he paid right up. That was before and after he paid the $500. He wanted that I should extend it a short time, until he could go home, and that he would send the amount, at least of the taxes and interest behind and falling due, and I refused, but at last I said: 'It will be the last chance unless you pay up; the $500 is no inducement; I will make no promise to give you further time.' I had tried him a year, and it was useless. He replied he would pay me $500, and would show me by sending right up the balance. He sent not a dollar further." There does not appear to have been any further communication between the parties before the sale.

Now, it seems to us that these subsequent occurrences between Ward and the principals themselves should be taken as doing away with or as answering the supposed promise to Loomis, the agent, at some time before, if there had been such a promise made; that such promise could not thereafter be reasonably relied upon, and lull the complainants into security that no proceeding would be had under the trust deed until some further notice had been given, and ample time to get the money. Loomis says the promise to him was to give him personal notice, and ample time to get and pay him (Ward) the money. Here was a substantial fulfillment of such a promise by personal notice to the principals themselves, and giving them ample time. They were distinctly notified that the interest and taxes must be paid immediately, —that no further time would be given unless they were so paid. It was virtually a notification that unless such payment of interest and taxes was made immediately, or at least upon Hairston's return to Mississippi, that then, and without any further delay, the trust deed would be foreclosed,—and there could not reasonably be reliance upon anything different. After this, there was ample time allowed to raise and

pay the money before making the sale, viz., from February 27, 1878, until December 8, 1879.   The trust deed itself was in the usual form, and the only notice it required was thirty days' publication of notice of the sale in a daily Chicago newspaper, which was given; and besides, there was in the trust deed an express waiver of personal notice of the sale.

We are unable to say that the decree is unwarranted by the evidence, and it is affirmed.

*Decree affirmed.*